**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PLAINTIFFS<br><br>Jesmarí Rosado Rivera and S.G.R.<br>     Plaintiffs<br><br>          v.<br><br>DEFENDANTS<br><br>Instituto Médico Familiar de Carolina (IPA 636);<br> Dr. John García and his conyugal partnership, Dr. Dow Smith and his conyugal partership, Doe Smith<br>And his conyugal partnership, Joan Roe, Jane Doe, and Ann Doe, Dr. Johan Doe, Dr. Jim Roe and Dr. Will Doe; Corporations A, B, C and D; Insurance Companies A, B, C and D. Dr. Tomas Valcarcel, Dr. Axel Alejandro and Dr. Oscar García and its conyugal partnership respectively.<br>     Defendants | Civil No.:<br><br>Diversity/Medical Malpractice<br>Plaintiff Demand Trial by Jury |

**COMPLAINT**

**TO THE HONORABLE COURT:**

   **COME NOW** plaintiff through her undersigned attorney and very respectfully

**STATES, ALLEGES and PRAYS:**

   **I.     JURISDICTION**

1.1  The diversity jurisdiction of this Court is invoked under the provisions of Title 28

   of the United States Code, Section 1332 (a) (1), and Article III of the Constitution

   of the United States, inasmuch as this is a civil action that involves an amount in

   controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of

interest and costs, and every issue of law and fact alleged herein is wholly between citizens of different states.

## II. THE PARTIES

2.1 Plaintiff S.G.R. is a minor, citizen of and domiciled in the State of Florida, and son of Jesmari Rosado Rivera and Braudy Omar Guzman Libran.

2.2 Plaintiff Jesmari Rosado Rivera is domiciled in the State of Florida.

2.3 All of the defendants are citizens of, domiciled in, and/organized and authorized and/or have their principal place of business in the Commonwealth of Puerto Rico.

2.4 Co-defendant Instituto Médico Familiar de Carolina is a professional partnership that employed or belonged to the physicians' defendants in the instant case.  Upon information and belief it is alleged that this defendant is organized and exist pursuant to the laws of the Commonwealth of Puerto Rico with its principal place of business therein.

2.5 Co-defendants Corporations A, B, C and D, entities whose names are unknown at this time, are the owners/operators of "Instituto Medico Familiar de Carolina".

2.6 Co-defendants Jane Doe; Joan Roe, and Ann Doe are persons whose names are unknown at this time, were married respectively to defendants Dr. Dow Smith, Dr. John Smith and Dr. Doe Smith, and had constituted conjugal partnerships at the time of the facts of this case.

2.7 Co-defendant Dr. Dow Smith is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.8 Co-defendant Dr. Doe Smith is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.9  Co-defendant Dr. John Garcia is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.10 Co-defendant Dr. Johan Doe is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.11 Co-defendant Dr. Jim Roe is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.12 Co-defendant Dr. Will Doe is a physician whose name is unknown at this time, and may be liable for the damages alleges herein.

2.13 Defendants Insurance Companies "A", "B", "C", and "D are fictitious names for those insurance company whose names are presently unknown, but who provided insurance coverage to several of the named defendants and, as such, is liable for their negligent actions and/or omissions.

2.14 Pursuant to Article 20.030 of the insurance Code of Puerto Rico, 26 LPRA 2003, a direct action may be brought against the casualty for liability insurers of a defendant and said insurer shall be liable subject to the exclusions and limitations of the policy.

### III.  FACTS

3.1 Mr. Braudy O. Guzmán Libran was treated at the "Instituto Médico Familiar de Carolina (IPA 636)" since February 5th, 2010.

3.2 On April 24th 2012 Mr. Braudy O. Guzman Libran went to "Instituto Medico Familiar de Carolina". In his medical record is documented for first time a red dark spot "mancha roja". It became in an ulcer in the ankle area of his ritht leg.

3.3  The presumptive diagnosis was tinea corporis (hongos en la piel "skin fungus"). Pain was documented as 6/10. The area of pain, the pain character was not documented.  Mr. Braudy Omar Guzman Libran was sent to his home with an "anti-fungus shampoo".

3.4  On January 26, 2013 was realized on Mr. Braudy Omar Guzman Libran an physical medical examination and patient history.  In his patient history was documented that he was a smoker and an ulcer with edema in his right leg.  He was diagnosed with an ulcer in his right leg and vascular periferic insuficiency and mycosis.

3.5  The management plan was laboratories, an intravenose dosis  of antibiotics, such as Levaquin® and Vancomicin®. It was also prescribed Vasodilan® (vasodilatador) y Septra® DS (antibiotic) oral, two (2) times a day. It was not indicated the lengh of the treatment.

3.6  No studies of vacular images was ordered.

3.7  On June 27, 2013, Mr. Guzmán came back to the "Instituto Médico Familiar de Carolina" and he was evaluated by Dr. García (his full name has not been identified). In his phisical test was documented mycosis in his left leg without edema, with "pruritus" and positive pulse.  The diagnosis was ulcer in his left leg, mycosis and periferic vascular insuficiency. The plan on than day was Levaquin® y Vancomicin® IV (second dosis) and Diflucan® (anti fungus) one tablet for five days.

3.8  A nurse note documented that the antibiotics were intravenose for five days and recomended  anti-embolism stockings. Mr. Guzman next appointmen was schedule for July 1st, 2013.

3.9  On June 28, 2013, the nusre documented that the patient was absent for his intravenose treatment of antibiotic due to abdominal pain.  He was informed that the antibiotic treatment should not be interrupted and that the antibiotic treatment may cause stomache pain.  Zantac was recomended for his abdominal pain.

3.10     On July 2nd, 2013, Mr. Guzman came back to the medical institute in order to continue the intravenose antibiotic treatment. On that day was documented mycosis and ulcer on his right leg. For 3rd time was ordered Levaquin® and Vancomicin® .

3.11     On July 3rd, 2013, Mr. Guzman came back to the medical Institute in order to continue treatment. For 4th time he was ordered antibiotics and had the same diagnosis as the previous day.

3.12     On November 14th, 2013, Mr. Guzman came back to the medical institute due to the ulcer in his right leg. The physical evaluation desbried an ulcer in "estadio II".

3.13     On that same date was prescribed oral and cream of anti fungus, corticosterois and toradol for five days.

3.14     On November 18th, 2013 it was documented a dark descolorization in the ulcer of his right leg. It was documented that Mr. Guzman was taking antibiotics, a continuace appointment was schedule with routine labs ordered. The diagnosis was ulcer and periferic vascular insuficiency in his right leg.

3.15     On December 19th, 2013, Mr. Guzman came back to the medical Instutue. It was described a moderate ulcer with fetid odor, 3 x 5 x 1 cm dimensions with dark irregulars borders. No periferic pulses were documented and intravenose antibiotic were prescribed for 3 days, analgesics and Neurontin®. He was going to be evaluated by Mr. Garcia.

3.16     On December 20th, 2013, Mr. Guzman came back to the Institute and it was documented ulcer in his right leg. No periferic pulse was described. The diagnose was ulcer in his right leg, mycosis, periferic vascular insuficiency. An additional dosis of antibiotic intravenose was given.

3.17     On December 21th, 2013 was given a third antibiotic dosis. A physical evaluation was not made. No periferic pulse were described and a fourth antibiotic dosis was prescribed.

3.18    On December 23rd, 2013 the Mr. Guzman went to his continuace appointment. The physical evaluation described an ulcer of 10cm long, with yellow color in the interior of his leg.  It was clasified as an ulcer of 3rd grade. Radiographies were ordered, labs,® and a surgeon was refered.

3.19    On December 26th, 2013 was documented no improvement in Mr. Guzman, no physical evaluation was made, nor periferic pulse was documented.  It was diagnosed a 3rd ulcer grade.  Only a "cura loca" was offered.  Pain was documented as 6/10.

3.20    Dissatisfied with the medical treatment, Mr. Guzman, went looking for another medical asistance.  He went to Dr. Luis nazario Guirau, who as soon he evaluated Mr. Guzman ordered vascular studies, which were never ordered by any of the physicians of the Medical Institute.

3.21    An ultrasound vascular arterial study was made in the inferior extremities . ("High Resolution Color Duplex Scan").

3.22    The study was negative in Mr. Guzman left leg but in his right leg was positive.

3.23    Mr. Guzman, on that same date, was sent to the Hospital Auxilio Mutuo. At the Hospital he was hospitalized by Dr. Pedro Tirado Menéndez, with a diagnose of celulitis and an infected ulcer ins his right foot and leg.   Dr. Tirado Menéndez documented that the ulcer infection had (5) month of evolution.

3.24    Dr. Escribano, described the ulger in the IV grade, the superlative grade of complexity.  He also described Mr. Guzman left ankle as deformed, without pulse nor capilar.

3.25    The Surgeon, Dr. Silva, documented that documented that Mr. Guzman had the Buerger's condition.  He also documented that Mr. Guzman was treated for 5 month by physicians del Intituto  Medico Familiar without referral.

3.26    The chief of vascualr surgery, Dr. Edwin Torres Rivera. An anticoagulatns terapy was started.

3.27    Since January 19th, 2014 until February 8, 2014 Mrs. Guzman was evaluated by different physicians through several studies.

3.28    On February 8th, 2014, Dr. Torres Rivera interved with Mr. Guzman under local anesthesia and did a vascular ("by pass"). The pre-surgery diagnose was gangrene in Mr. Guzman right foot and leg.

3.29    Unfortunately, the surgery did not work and on February 14, 2014 an additionl surgery for "by pass"vascular, was made trying to save Mr. Guzman right foot and leg.

3.30    Between February 18th and 19th , 2014 the gangrene was worst.

3.31    On February 20th, 2014, Mr. Guzman right leg amputation was planned.

3.32    On February 21st, 2014 was Mr. Guzman right leg amputation surgery. It was made under general anesthessia.

3.33    On February 28th, 2014 Mr. Guzman was described as stable and satisfactory contition at the Hospital. He was refered to Health South en el Centro Medico, the rehabilitation hospital and anticoaguant Xarelto was prescibed. On that same date he was (dado de alta).

3.34    On June 6, 2014, Mr. Guzman received an disability certificate from Instituto Médico Familiar de Carolina.

3.35    During all this time, since the first time that Mr. Guzman went the the Instituto Medico Familiar de Carolina his relationship with his only son was negatively affected.

3.36    Mr. Guzman, since December 2013 stop working and is not able to work any more.

3.37    Mr. Guzman could not sustain economically, emotionally and affectivally to his son for all that period.

3.38	After Mr. Guzman amputation, his son, S.G.R., will be limited to have the same expectation of social, personal and economic interacion with his father.

3.39	Plaintiff, S.G.R., has suffered by seeing his father suffering before, during and after his father's leg amputation.

3.40	Plaintiff, Jesmari Rosado Rivera, has suffered by seeing the person whom she was sharing a couple relationship and who is the father of her son, suffering before, during and after Braudy's leg amputation.

3.41	Plaintiff, Jesmari Rosado Rivera, has suffered by knowing that his son wont be able to have the same quality of life and the same expectation of social, personal and economic interaction with his father.

3.42	Plaintiff, Jesmari Rosado Rivera, has suffered an economic hardship due to the inability of Braduy Guzman to be an economic provider to his son as he was able to be.

3.43	Plaintiff, Jesmari Rosado Rivera, has sufferd the negative impact that the negligence against Braudy Guzman as impact in her personal life with him.

## IV. CAUSE OF ACTION

### I.  FIRST CAUSE OF ACTION

3.27 The allegations of all preceding paragraphs are realleged and incorporated herein by reference.

3.28 Pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142, a person who causes damage to another, through fault and/or negligence, must repair the damage caused.  An employer is liable for his employee's or agent's fault or negligence.

3.28 Defendant "Instituto Medico Familiar de Carolina", through its personnel, medical employees, contractors and/or agents was under a duty, at all relevant times, to offer a

patient such as Mr. Braudy Omar Guzman Libran good, acceptable medical care consistent with the degree of skill, care and learning ordinarily exercised by the average qualified medical personnel taking into account the existing state of knowledge communication and practice of medicine within Puerto Rico and the United States.

3.29 Defendant "Instituto Medico Familiar de Carolina" did not meet the standards and requirements of good medical practice, breached their duty of care, were negligent and committed medical and hospital malpractice because the monitoring, evaluation and treatment of Mr. Braudy O. Guzman Libran deviated from accepted standards of medical care, in light of the modern means of communication.

3.30 Defendant "Instituto Medico Familiar de Carolina" and its personnel, contractors and/or agents failed to provide Mr. Braudy Omar Guzman Libran an appropriate medical screening examination, care and treatment, within the capability of its clinical unit and by failing to do so, violated the prevailing standards of care applicable to patients that visit general practitioners in a managed care setting.

3.31 Plaintiffs are informed and believe that defendants were negligent in other ways in their treatment of Mr. Braudy Omar Guzman Libran and Plaintiffs will amend this complaint to set forth those actions with particularity once they are ascertained.

3.32 The negligent acts and omissions of defendant "Instituto Medico Familiar de Carolina", through its personnel, medical employees, contractors and/or agents were the proximate cause of  Mr. Braudy Omar Guzman Libran's suffering the amputation of one of his legs and the suffering due to the extension of the wrong treatment received by Mr. Braudy Omar Guzman Libran which increased his risk to develop gangrene and ultimately death.

3.32 Defendant "Instituto Medico Familiar de Carolina" is also liable for all of Plaintiffs suffering and damages, for which reason it is liable to Plaintiffs for the amounts requested herein below.

## SECOND CAUSE OF ACTION

3.33 The foregoing paragrahps are repeated and realleged herein.

3.34 Pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA Sec. 5141 and 5142, a person who causes damage to another, through fault and/or negligence, must repair the damage caused. An employer is liable for his employee's or agent's fault or negligence.

3.35 Defendants Dr. John Garcia and his conyugal partnership, Dr. Dow Smith and his conyugal partership, Doe Smith and his conyugal partnership, Joan Roe, Jane Doe, and Ann Doe, Dr. Johan Doe, Dr. Jim Roe and Dr. Will Doe; Corporations A, B, C and D; Insurance Companies A, B, C and D, through their owners, partners, stockholder, personnel, medical employees, contractors and/or agents were under a duty, at all relevant times, to offer a patient such as Mr. Braudy Omar Guzman Librangood, acceptable medical care cinsistent with the degree of skill, care and learning ordinarily exercised by the average qualified medical personnel taking into account the existing state of knowledge communication and practice of medicine within Puerto Rico and the United States.

3.36 The aforementioned Defendants and their owners, partners, stockholder, personnel, contractors and/or agents failed to provide Mr. Braudy Omar Guzman Libran an appropriate medical screening examination, care and treatment, within the capability of its clinical unit or office by failing to do so, violated the prevailing standards of care

applicable to patients that visit any physician office or Medical Intitutes (like IPAs) for medical evaluation and management. In particular, Plaintiffs allege that defendants failed to properly diagnose the serious medical condition suffered by Mr. Braudy Omar Guzman Libran in order to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.37 Defendants John Garcia, Dow Smith and Doe Smith were under a duty at all times to screen, evaluate and treat Defendants John Smith, Dow Smith and Doe Smith at a level consitent with the prevailing standards of care.

3.38 Defendants John Garcia, Dow Smith and Doe Smith failed in their duty and acted negligently in that among other negligent acts and omissions, they did not diagnose and promptly treat Mr. Braudy Omar Guzman Libran leg condition according to the standard of good medical care for his condition, to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.39 The negligent acts and omissions of Defendants John Garcia, Dow Smith and Dow Smith, proximately caused the damages suffered by all Plaintiffs, for which reason they are liable to Plaintiffs for the amounts requested herein below.

3.40 Plaintiffs are informed and believe that defendants, were negligent in other ways in their treatment of Mr. Braudy Omar Guzman Libran and Plaintiffs will amend this complaint to set forth those actions with particularity once they are ascertained.

3.41 The conjugal partnerships composed by Defendants John Garcia, Dow Smith and Doe Smith respectevely, is equally liable to Plaintiffs due to the fact that it benefited

economically from the formers practice of medicine and is legally responsible for her debts.

3.42 Defendants Insurance Companies A, B, C and D are liable for the negligence and fault and legal violations of their respective insured up to the insurance coverage limit of each policy issued to their benefit.

### THIRD CAUSE OF ACTION

3.43 The foregoing paragrahps are repeated and realleged herein.

3.44 Pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA Sec. 5141 and 5142, a person who causes damage to another, through fault and/or negligence, must repair the damage caused. An employer is liable for his employee's or agent's fault or negligence.

3.45 Defendants  Dr. Oscar Garcia and his conyugal partnership, was under a duty, at all relevant times, to offer a patient such as Mr. Braudy Omar Guzman Libran a good, acceptable medical care cinsistent with the degree of skill, care and learning ordinarily exercised by the average qualified medical personnel taking into account the existing state of knowledge communication and practice of medicine within Puerto Rico and the United States.

3.36 The aforementioned Defendant and their owners, partners, stockholder, personnel, contractors and/or agents failed to provide Mr. Braudy Omar Guzman Libran an appropriate medical screening examination, care and treatment, within the capability of its clinical unit or office by failing to do so, violated the prevailing standards of care applicable to patients that visit any physician office or Medical Intitutes (like IPAs) for medical evaluation and management.  In particular, Plaintiffs allege that defendants

failed to properly diagnose the serious medical condition suffered by Mr. Braudy Omar Guzman Libran in order to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.37 Defendant Oscar Garcia was under a duty at all times to screen, evaluate and treat Mr.Braudy at a level of the prevailing standards of care.

3.38 Defendant Oscar Garcia failed in their duty and acted negligently in that among other negligent acts and omissions, he did not diagnose and promptly treat Mr. Braudy Omar Guzman Libran leg condition according to the standard of good medical care for his condition, to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.39 The negligent acts and omissions of Defendant Oscar Garcia proximately caused the damages suffered by all Plaintiffs, for which reason they are liable to Plaintiffs for the amounts requested herein below.

3.40 Plaintiffs are informed and believe that defendant was negligent in other ways in their treatment of Mr. Braudy Omar Guzman Libran  and Plaintiffs will amend this complaint to set forth those actions with particularity once they are ascertained.

3.41 The conjugal partnerships composed by Defendants Oscar Garcia is equally liable to Plaintiffs due to the fact that it benefited economically from the formers practice of medicine and is legally responsible for his debts.

3.42 Defendants Insurance Companies A, B, C and D are liable for the negligence and fault and legal violations of their respective insured up to the insurance coverage limit of each policy issued to their benefit.

## FOURTH CAUSE OF ACTION

3.43 The foregoing paragrahps are repeated and realleged herein.

3.44 Pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA Sec. 5141 and 5142, a person who causes damage to another, through fault and/or negligence, must repair the damage caused. An employer is liable for his employee's or agent's fault or negligence.

3.45 Defendants Dr. Tomas Valcarcel and his conyugal partnership, was under a duty, at all relevant times, to offer a patient such as Mr. Braudy Omar Guzman Libran a good, acceptable medical care cinsistent with the degree of skill, care and learning ordinarily exercised by the average qualified medical personnel taking into account the existing state of knowledge communication and practice of medicine within Puerto Rico and the United States.

3.36 The aforementioned Defendant and their owners, partners, stockholder, personnel, contractors and/or agents failed to provide Mr. Braudy Omar Guzman Libran an appropriate medical screening examination, care and treatment, within the capability of its clinical unit or office by failing to do so, violated the prevailing standards of care applicable to patients that visit any physician office or Medical Intitutes (like IPAs) for medical evaluation and management. In particular, Plaintiffs allege that defendants failed to properly diagnose the serious medical condition suffered by Mr. Braudy Omar Guzman Libran in order to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.37 Defendant Dr. Tomas Valcarcel was under a duty at all times to screen, evaluate and treat Mr.Braudy at a level of the prevailing standards of care.

3.38 Defendant Dr. Tomas Valcarcel failed in their duty and acted negligently in that among other negligent acts and omissions, he did not diagnose and promtly treat Mr. Braudy Omar Guzman Libran leg condition according to the standard of good medical care for his condition, to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.39 The negligent acts and omissions of Defendant Dr. Tomas Valcarcel proximately caused the damages suffered by all Plaintiffs, for which reason they are liable to Plaintiffs for the amounts requested herein below.

3.40 Plaintiffs are informed and believe that defendant was negligent in other ways in their treatment of Mr. Braudy Omar Guzman Libran and Plaintiffs will amend this complaint to set forth those actions with particularity once they are ascertained.

3.41 The conjugal partnerships composed by Defendant Dr. Tomas Valcarcel is equally liable to Plaintiffs due to the fact that it benefited economically from the formers practice of medicine and is legally responsible for his debts.

3.42 Defendants Insurance Companies A, B, C and D are liable for the negligence and fault and legal violations of their respective insured up to the insurance coverage limit of each policy issued to their benefit.

## FIFTH CAUSE OF ACTION

3.43 The foregoing paragrahps are repeated and realleged herein.

3.44 Pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA Sec. 5141 and 5142, a person who causes damage to another, through fault and/or negligence, must repair the damage caused. An employer is liable for his employee's or agent's fault or negligence.

3.45 Defendants Dr. Axel Alejandro and his conyugal partnership, was under a duty, at all relevant times, to offer a patient such as Mr. Braudy Omar Guzman Libran a good, acceptable medical care cinsistent with the degree of skill, care and learning ordinarily exercised by the average qualified medical personnel taking into account the existing state of knowledge communication and practice of medicine within Puerto Rico and the United States.

3.36 The aforementioned Defendant and their owners, partners, stockholder, personnel, contractors and/or agents failed to provide Mr. Braudy Omar Guzman Libran an appropriate medical screening examination, care and treatment, within the capability of its clinical unit or office by failing to do so, violated the prevailing standards of care applicable to patients that visit any physician office or Medical Intitutes (like IPAs) for medical evaluation and management.  In particular, Plaintiffs allege that defendants failed to properly diagnose the serious medical condition suffered by Mr. Braudy Omar Guzman Libran in order to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.37 Defendant Dr. Axel Alejandro was under a duty at all times to screen, evaluate and treat Mr.Braudy at a level of the prevailing standards of care.

3.38 Defendant Dr. Axel Alejandro failed in their duty and acted negligently in that among other negligent acts and omissions, he did not diagnose and promptly treat Mr. Braudy Omar Guzman Libran leg condition according to the standard of good medical care for his condition, to avoid all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death.

3.39 The negligent acts and omissions of Defendant Dr. Axel Alejandro proximately caused the damages suffered by all Plaintiffs, for which reason they are liable to Plaintiffs for the amounts requested herein below.

3.40 Plaintiffs are informed and believe that defendant was negligent in other ways in their treatment of Mr. Braudy Omar Guzman Libran and Plaintiffs will amend this complaint to set forth those actions with particularity once they are ascertained.

3.41 The conjugal partnerships composed by Defendants Dr. Axel Alejandro is equally liable to Plaintiffs due to the fact that it benefited economically from the formers practice of medicine and is legally responsible for his debts.

3.42 Defendants Insurance Companies A, B, C and D are liable for the negligence and fault and legal violations of their respective insured up to the insurance coverage limit of each policy issued to their benefit.

### III. DAMAGES AND RELIEF

3.43 Defendants are jointly and severally liable for all Plaintiffs damages.

3.44 As a direct consequence of the negligence of the defendants described in this Complaint, all Plaintiffs suffered, suffer and will continue to suffer severe permanent emotional distress and mental anguishes.

3.45 As a direct consequence of co-defendants' negligence and medical malpractice, Plaintiffs has suffered, suffer and will forever suffer deep and severe mental and emotional distress, mental anguish, depression, loss of enjoyment of life and other moral damages due to all the suffering for around one year, the ultimate consequence of the three surgery, including his leg amputation surgery and risk of death of Mr. Braudy Omar Guzman Libran.

3.46 As a direct consequence of co-defendants' negligence and medical malpractice, Plaintiffs has suffered, suffer and will forever suffer deep and severe physical permanent limitation due to his leg amputation and physical surgery intervention in his body due to the three surgery, including his leg amputation surgery and risk of death of Mr. Braudy Omar Guzman Libran.

3.47 Plaintiff Jesmari Rosado Rivera claims personal, emotional, mental, economic loss since 2012, the present and the future and child-father relationship quality negatively affected, which damages are estimated in amount not less than 3 million dollars.

3.48 Plaintiff S.G.R. claims personal, emotional, mental, economic loss since 2012, the present and the future and child-father relationship quality negatively affected, which damages are estimated in amount not less than Three million dollars.

3.39 For these damages plaintiffs claims a sum not less than six million as compensation.

3.40 To the extent the defendants deny liability for the damages herein alleged, they act with obstinacy and temerity and are hence liable for prejudgment interest and attorney's fees.

**WHEREFORE**, the plaintiff very respectfully prays that the Honorable Court enter judgment against the defendants and award damages in his favor in the amount of Six million plus costs, interest and attorney's fees.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of February, 2015.

S/Carmen L. Soto Tellado
_____
CARMEN L. SOTO TELLADO
SOTO-TELLADO LAW CENTRE
Attorney for Plaintiff
USDC-PR No.:  226012
251.Recinto Sur
San Juan, Puerto Rico 00901
Tel.:  (787) 721.7929
E-mail:  law@microjuris.com